Case No. 12-2021

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

MICHAEL J. CONLIN,

*Plaintiff-Appellant,*

v.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, ORLANS AND ASSOCIATES P.C., MARSHALL ISAACS,

*Defendants-Appellees.*

On Appeal From The United States District Court
For The Eastern District of Michigan, Southern Division
Case No. 5:11-cv-15352

**BRIEF OF DEFENDANTS-APPELLEES MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE**

Thomas M. Schehr (P54391)
Michael J. Blalock (P68969)
DYKEMA GOSSETT PLLC
400 Renaissance Center, 37th Floor
Detroit, MI 48243
Telephone: (313) 568-6659
Facsimile: (313) 568-6658

Attorneys for Defendants-Appellees

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, and Sixth Circuit Rule 26.1, Defendant-Appellee Mortgage Electronic Registration Systems, Inc. makes the following disclosure:

1.     Are said parties a subsidiary or affiliate of a publicly-owned corporation?

No.

2.     Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No.

By: /s/Thomas M. Schehr
     Thomas M. Schehr (P54391)
     Michael J. Blalock (P68969)
     Attorneys for Defendant-Appellee
     400 Renaissance Center, 37th Floor
     Detroit, MI  48243
     Telephone:  (313) 568-6659
     Facsimile:  (313) 568-6658
     tschehr@dykema.com
     mblalock@dykema.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, and Sixth Circuit Rule 26.1, Defendant-Appellee U.S. Bank, National Association, as Trustee makes the following disclosure:

1.  Are said parties a subsidiary or affiliate of a publicly-owned corporation?

> Yes.  U.S. Bank, National Association is a wholly owned indirect subsidiary of U.S. Bancorp.  U.S. Bancorp is a publicly owned corporation.

2.  Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome?

> No.

By: /s/Thomas M. Schehr
        Thomas M. Schehr (P54391)
        Michael J. Blalock (P68969)
        Attorneys for Defendant-Appellee
        400 Renaissance Center, 37th Floor
        Detroit, MI  48243
        Telephone:  (313) 568-6659
        Facsimile:  (313) 568-6658
        tschehr@dykema.com
        mblalock@dykema.com

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ..........................................i

CORPORATE DISCLOSURE STATEMENT ...................................... ii

TABLE OF AUTHORITIES ...................................................v

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...........................1

COUNTER-STATEMENT OF JURISDICTION ...................................2

COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW .................3

COUNTER-STATEMENT OF THE CASE ..................................4

COUNTER-STATEMENT OF FACTS ....................................5

    A.  Conlin's Mortgage Loan ................................................5

    B.  The Assignment To U.S. Bank ..................................6

    C.  Conlin's Default And Seven Bankruptcy Filings ...........................6

    D.  U.S. Bank Forecloses By Advertisement ..........................6

    E.  Conlin's Complaint And Motion To Remand.............................7

    F.  The District Court Grants U.S. Bank's And MERS' Motion To
       Dismiss..................................................9

SUMMARY OF ARGUMENT ...............................................10

STANDARD OF REVIEW ..................................................10

ARGUMENT ...............................................................12

I.  THE DISTRICT COURT PROPERLY CONCLUDED THAT AFTER
   THE EXPIRATION OF THE REDEMPTION PERIOD CONLIN
   LACKED STANDING TO CHALLENGE THE LEGAL CAPACITY
   OF THE MORTGAGEE TO FORECLOSE BY ADVERTISEMENT.............12

    A.  Michigan's Foreclosure By Advertisement Statute .......................12

B. U.S. Bank Complied With Michigan's Foreclosure By Advertisement Statute .................................................................... 14

C. After The Redemption Period Expired, Conlin Had No Basis Under Michigan Law To Challenge The Capacity Of The Mortgagee To Foreclose By Advertisement .......................................................... 15

II. CONLIN FAILED TO STATE A PLAUSIBLE CLAIM OF FRAUD OR IRREGULARITY TO TOLL THE REDEMPTION PERIOD ................... 22

A. Conlin Has Not Stated A Claim For Fraud .................................... 23

B. Conlin Lacks Standing To Challenge The Assignment, To Which He Is Not A Party ........................................................................ 24

III. MERS HAD AUTHORITY TO ASSIGN THE MORTGAGE ......................... 31

A. Conlin Expressly Agreed That MERS Could Assign The Mortgage As Mortgagee As Nominee For The Originial Lender And The Lender's Successors And Assigns ............................................... 31

B. Conlin's Argument That The Assignment "Split" The Mortgage And Note Is Inconsistent With Michigan Supreme Court Precedent In *Saurman* ................................................................................. 33

CONCLUSION .................................................................................................. 37

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS .............................................................. 39

CERTIFICATE OF SERVICE ........................................................................... 40

COUNTER-DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .......................................................................... 41

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Niemann,*
    46 Mich. 135 (1881) ........................................................................34

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................11

*Awad v. General Motors Acceptance Corp.,*
    No. 302692, 2012 WL 1415166 (Mich. Ct. App. April 24, 2012)..............18, 19

*Bakri v. Mortgage Electronic Registration System (After Remand),*
    No. 297962 (Mich. Ct. App. Oct. 30, 2012)........................................35

*Bakri v. Mortgage Electronic Registration System,*
    No. 297962, 2011 WL 3476818 (Mich. Ct. App. Aug. 9, 2011) .......................35

*Bass v. Federal Land Bank,*
    300 Mich. 418 (1942) ................................................................12, 13

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................11

*Bender v. Southland Corp.,*
    749 F.2d 1205 (6th Cir. 1984) ...........................................................23

*Bowles v. Oakman,*
    246 Mich. 674 (1929) .....................................................................26

*Brezzell v. Bank of America, N.A.,*
    No. 11-11467, 2011 WL 2682973 (E.D. Mich. July 11, 2011)........................19

*Burkhardt v. Bailey,*
    260 Mich. App. 636 (2004) ..........................................................13, 31

*Burkhardt v. City National Bank,*
    57 Mich. App. 649 (1975) .................................................................13

*Cable v. MERS, Inc.,*
    No. 11-14877, 2012 WL 2374236 (E.D. Mich. Feb. 28, 2010) ........................26

*Calaveras Timber Co. v. Michigan Trust Co.*,
    278 Mich. 445 (1936) .......................................................................................13

*Church & Church Inc. v. A-1 Carpentry*,
    281 Mich. App. 330 (2008) ...................................................................13, 30, 31

*Courie v. Alcoa Wheel & Forged Prods.*,
    577 F.3d 625 (6th Cir. 2009) .............................................................................11

*Detroit Trust Co. v. Aggozinio*,
    280 Mich. 402 (1937) .......................................................................................22

*Dingman v. OneWest Bank, FSB*,
    859 F.Supp.2d 912 (E.D. Mich. 2012) .............................................................20

*Directv, Inc. v. Treesh*,
    487 F.3d 471 (6th Cir. 2007) .............................................................................11

*Drew v. Kemp-Brooks*,
    802 F. Supp. 2d 889 (E.D. Mich. 2011) ...........................................................20

*Fawaz v. Aurora Loan Servs. LLC*,
    2012 WL 1521589 (Mich. Ct. App. May 1, 2012)............................................35

*Felcher v. Button*,
    265 Mich. 231 (1933) .......................................................................................28

*Feldman v. Equitable Trust Co.*,
    278 Mich. 619 (1937) .......................................................................................29

*Galati v. Wells Fargo Bank*,
    Case No. 11–11487, 2011 WL 5178276 (E.D. Mich. Nov. 1, 2011)................21

*Griffin v. Union Guardian Trust Co.*,
    261 Mich. 67 (1932) .........................................................................................29

*Hargrow v. Wells Fargo Bank, N.A.*,
    No. 11-1806, 2012 WL 2552805 (6th Cir. July 3, 2012) ............................15, 36

*Hi–Way Motor Co. v. International Harvester Co.*,
    398 Mich. 330 (1976) .......................................................................................23

*Horton v. Verhelle*,
231 Mich. App. 667 (1998) ................................................................28

*Horvath v. National Mortg. Co.*,
238 Mich. 354 (1927) ........................................................................28

*Hubbell, Roth & Clark, Inc. v. Jay Dee Contractors, Inc.*,
249 Mich. App. 288 (2002) ...............................................................31

*In re DeLorean Motor Co.*,
991 F.2d 1236 (6th Cir. 1993) ...........................................................12

*Jackson v. CitiMortgage, Inc.*,
No. 10-14221, 2011 WL 479923 (E.D. Mich., Feb. 4, 2011) .............20

*Knox v. Trott & Trott, PC*,
No. 10–13175, 2011 WL 1540340 (E.D. Mich., April 21, 2011) .......34

*Langley v. Chase Home Finance, LLC*,
No. 10-604, 2011 WL 130926 (W.D. Mich. Mar. 28, 2011) ..............19

*Livonia Property Holdings, LLC v. 12840-12976 Farmington Road
Holdings, LLC*, 717 F.Supp.2d 724 (E.D. Mich. 2010),
*aff'd* 399 Fed. Appx. 97, 2010 WL 4275305 (6th Cir. 2010)...........24, 25, 26, 27

*Mission of Love v. Evangelist Hutchinson Ministries*,
No. 266219, 2007 WL 1094424 (Mich. Ct. App. Apr 12, 2007) .................18, 19

*Moriarty v. BNC Mortgage, Inc.*,
No. 10-13860, 2010 WL 5173830 (E.D. Mich., Dec. 10, 2010).........20

*New Freedom Mortgage Corp. v. Globe Mortgage Corp.*,
281 Mich. App. 63 (2008) .................................................................29

*Overton v. Mortgage Electronic Registration Sys.*,
No. 284950, 2009 WL 1507342 (Mich. Ct. App. May 28, 2009)..........17, 18, 19

*Pashak v. Interstate Highway Constr.*,
No. 189886, 1998 WL 2001203 (Mich. Ct. App. Mar. 20, 1998)......................26

*Piotrowski v. State Land Office Bd*,
302 Mich. 179 (1942) ........................................................................16

*Pulleyblank v. Cape*,
179 Mich. App. 690 (1989) .................................................................29

*Quality Prods and Concepts Co v. Nagel Precision, Inc.*,
469 Mich. 362 (2003) .........................................................................31

*Reading v. Waterman*,
46 Mich. 107 (1881) ...........................................................................13

*Reid v. Rylander*,
270 Mich. 263 (1935) ...................................................................15, 21

*Residential Funding Co., LLC v. Saurman*,
490 Mich. 909 (2011) ..................................... 15, 31, 33, 34, 35, 36, 37

*Rory v. Continental Ins Co*,
473 Mich. 457 (2005) .........................................................................14

*Schulthies v. Barron*,
16 Mich. App. 246 (1969) .................................................................22

*Senters v. Ottawa Savings Bank, FSB*,
443 Mich. 45 (1993) ...........................................................................15

*Special Property VI v. Woodruff*,
273 Mich. App. 586 (2007) ...............................................................27

*Sweet Air Inv. Inc. v. Kenney*,
275 Mich. App. 492 (2007) ...............................................................22

*Talton v. BAC Home Loans Servicing LP*,
839 F. Supp. 2d 896 (E.D. Mich. 2012) ..........................................27

*Thomas v. Mortg. Electronic Registration Sys., Inc.*,
No. 11–15670, 2012 WL 834688 (E.D. Mich. Mar. 13, 2012) .........30

*United States v. Garno*,
974 F.Supp. 628 (E.D. Mich. 1997) .................................................21

*VanderWall v. Midkiff*,
166 Mich. App. 668 (1988) ...............................................................27

*West v. American Telephone & Telegraph Co.*,
  311 U.S. 223 (1940)................................................................21

*White v. Burkhardt*,
  338 Mich. 235 (1953) ..............................................................9

*Williams v. US Bank Nat'l Ass'n*,
  No. 10-14967, 2011 WL 2293260 (E.D. Mich., June 9, 2011).........................20

*Yuille v. American Home Mortg. Serv., Inc.*,
  No. 09-11203, 2010 WL 4260890 (E.D. Mich. Oct 25, 2010),
  *aff'd* 2012 WL 1914056 (6th Cir. May 29, 2012) ................................34

## RULES

Fed. R. App. P. 32(a)(5).............................................................39

Fed. R. App. P. 32(a)(6).............................................................39

Fed. R. App. P. 32(a)(7)(B)..........................................................39

Fed. R. Civ. P. 9(b) ................................................................23

Fed. R. Civ. P. 12(b)(6).........................................................9, 10

## STATUTES

12 U.S.C. § 1291.....................................................................2

28 U.S.C. § 1332.....................................................................2

M.C.L. § 600.3204(1) ...............................................................12

M.C.L. § 600.3204(1)(b)..........................................................14, 29

M.C.L. § 600.3204(1)(c)............................................................14

M.C.L. § 600.3204(1)(d)..................................................14, 34, 35, 36

M.C.L. § 600.3204(3) ............................................................12, 15

M.C.L. § 600.3204(a)...............................................................14

M.C.L. § 600.3205(a)...............................................................13

ix

M.C.L. § 600.3236 ................................................................................15, 21

M.C.L. § 600.3240(8) ...........................................................................15, 21

M.C.L. § 600.3280 ...................................................................................30

M.C.L. § 600.3288 ...................................................................................29

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Defendants-Appellees Mortgage Electronic Registration Systems, Inc. ("MERS") and U.S. Bank, National Association, as Trustee ("U.S. Bank") respectfully request oral argument to the extent it will assist the Court in understanding the issues and enable the parties to address outstanding questions of the Court.

## <u>COUNTER-STATEMENT OF JURISDICTION</u>

Defendants-Appellees Mortgage Electronic Registration Systems, Inc. and U.S. Bank, National Association, as Trustee, agree that the district court had subject matter jurisdiction over this matter under 28 U.S.C. § 1332, and that this Court has jurisdiction over this appeal under 12 U.S.C. § 1291.

## <u>COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.      Whether the district court properly dismissed Plaintiff's claims where Plaintiff is precluded under Michigan law from challenging the legal capacity of U.S. Bank to foreclose where Plaintiff did not raise his challenge until after the post-foreclosure redemption period expired?

2.      Whether the district court properly dismissed Plaintiff's claims because Plaintiff, as a stranger to the assignment of the mortgage, lacks standing to challenge the assignment of the mortgage where the parties to the assignment ratified the assignment, and where Plaintiff failed to allege any risk of double liability?

3.      Whether the district court properly dismissed Plaintiff's claims because Plaintiff's argument concerning MERS' ability to validly assign the mortgage is inconsistent with Michigan law and the mortgage that Plaintiff signed, pursuant to which Plaintiff specifically granted MERS the right to assign the mortgage?

           To all these questions Defendants-Appellees MERS and U.S. Bank answer "Yes"

           This Court should answer "Yes"

## <u>COUNTER-STATEMENT OF THE CASE</u>

Plaintiff-Appellee Michael Conlin asserts that a March 2011 foreclosure should be rescinded because of a purported issue concerning the assignment of the mortgage in 2008. Conlin did not raise any issue concerning the assignment until he filed his Complaint in this matter on October 28, 2011, after the foreclosure occurred and after the six-month statutory period to redeem, or buy back, the property had expired.

Conlin's Complaint is an apparent attempt to stave off eviction despite having defaulted on his mortgage loan. Conlin is no stranger to the court system, as he filed seven Chapter 13 bankruptcy cases between 2007 and 2010 in an apparent attempt to prevent foreclosure of the mortgage he granted in exchange for borrowing money. In 2010, the United States Bankruptcy Court for the Eastern District of Michigan banned Conlin from filing another bankruptcy case for two years. The foreclosure of the mortgage finally went forward in March 2011, and he filed this lawsuit in October 2011, after the six-month redemption period expired without his redeeming the property.

Conlin's three arguments on appeal relate solely to the assignment of the mortgage from MERS to U.S. Bank. The district court correctly held that Michigan law precludes a borrower from challenging the legal capacity of the mortgagee to foreclose after the redemption period has expired. Michigan law also

prevents a borrower from challenging an assignment to which he is not a party.  In any event, Conlin granted MERS unambiguous authority to assign the mortgage to U.S. Bank, which properly foreclosed by advertisement under Michigan law.  The district court properly dismissed Conlin's Complaint for failure to state a plausible claim for relief.  This Court should affirm.

## **COUNTER-STATEMENT OF FACTS**

### A.    **Conlin's Mortgage Loan**

This case involves real property located at 1304 Belmar Place, Ann Arbor, MI 48103 (the "Property").  On April 8, 2005, Conlin obtained a refinancing loan in the amount of $240,000.00 (the "Loan") from Bergin Financial, Inc. ("Bergin"). Conlin signed a promissory note (the "Note") promising to repay the Loan.  RE 7, Motion to Dismiss, at Exhibit A, Note, Pg ID 474.  As security for the Loan, Conlin granted a mortgage on the Property in favor of MERS as mortgagee and nominee for the lender and its successors and assigns (the "Mortgage").  RE 7, at Exhibit B, Mortgage, Pg ID 485.  Conlin's Mortgage expressly granted MERS and the successors and assigns of MERS the power of sale and "the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."  *Id*., p. 3, Pg ID 488. The Mortgage was recorded on May 6, 2005, at Liber 4776, at Page 372, Washtenaw County Records.  RE 7, at Exhibit B, Mortgage, Pg ID 485.

5

### B.     The Assignment To U.S. Bank

On May 15, 2008, MERS assigned the Mortgage to U.S. Bank (the "Assignment").  RE 7 at Exhibit C, Assignment, Pg ID 504.  Defendant Marshall R. Isaacs ("Isaacs") executed the Assignment on behalf of MERS before a notary.  *Id*.  The Assignment was recorded on May 20, 2008 in Liber 4682, Page 521, Washtenaw County Records.  *Id*.  Conlin is not a party to the Assignment.  *Id*.

### C.     Conlin's Default And Seven Bankruptcy Filings

It is undisputed that Conlin failed to repay and defaulted on his Loan.  In fact, Conlin filed Chapter 13 Bankruptcy seven different times within a three-year period.  *See* U.S. Bankruptcy Court, Eastern District of Michigan, Case Nos. 07-53918, 08-44841, 08-54770, 08-65235, 09-45169, 09-63372, 10-64036.  None of the bankruptcy cases resulted in the confirmation of a Chapter 13 plan, and Conlin never attended a § 341 meeting of creditors.  RE 17, Plaintiff's Reply Brief, at Exhibit M, March 2, 2009 Order, Pg ID 950.  The bankruptcy court banned Conlin from filing another bankruptcy case for two years.  RE 17 at Exhibit N, October 29, 2010 Order, Pg ID 953.

### D.     U.S. Bank Forecloses By Advertisement

Following the seventh bankruptcy filing and the bankruptcy court's order barring further filings, U.S. Bank foreclosed the Mortgage by advertisement.  U.S. Bank published notice of the foreclosure sale on March 3, 10, 17, and 24, 2011.

RE 7, Defendant's Motion to Dismiss and Brief in Support, at Exhibit D, Sheriff's Deed and Related Documents, p. 5, Pg ID 510. Notice of the foreclosure was posted at the Property on March 6, 2011. *Id*. at p. 4, Pg ID 509.

The foreclosure culminated with a March 31, 2011 sheriff's sale. RE 7 at Exhibit D, Sheriff's Deed, Pg ID 506. U.S. Bank made a credit bid of $159,200.00 at the sheriff's sale, which was the highest bid. *Id*.

Conlin had six months to redeem, or buy back, the Property following the foreclosure sale. The six-month redemption period expired on September 30, 2011. Conlin did not redeem the Property. Therefore, title to the Property vested in U.S. Bank on September 30, 2011.

### E. Conlin's Complaint And Motion To Remand

Conlin filed his Complaint on October 28, 2011 in Washtenaw County Circuit Court. RE 1, Notice of Removal, at Exhibit A, Complaint, Pg ID 12. In his Complaint, Conlin alleged eight causes of action: Count I, fraud (related to an assignment of mortgage from MERS to U.S. Bank); Count II, fraud (related to various other unspecified affidavits and assignments); Count III, violation of M.C.L. § 600.3205(a); Count IV, quiet title; Count V, breach of contract; Count VI, conversion; Count VII, claiming defendants are not holders of the original notes; and Count VIII, claiming defendants are not real parties in interest. *Id*. Conlin sought a declaration that the foreclosure sale was void, as well as money

damages. *Id.* As regards the Assignment, the Complaint makes vague assertions that Isaacs "robo-signed" the Assignment, and that the notary's signature looks different from the signature on her notary application with the State of Michigan.[1] RE 1, Notice of Removal, at Exhibit A, Complaint, ¶¶ 5, 21, Pg ID 17, 22.

Defendants U.S. Bank and MERS timely removed the case to the United States District Court for the Eastern District of Michigan based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332. RE 1, Notice of Removal, Pg ID 1. As explained in the Notice of Removal, the district court had diversity jurisdiction because Conlin, MERS and U.S. Bank are completely diverse, and the amount in controversy exceeds $75,000. *Id.* Further, the Notice of Removal explained that the two non-diverse defendants – Orlans Associates, P.C. ("Orlans") and Isaacs, who acted solely as attorneys and agents for U.S. Bank and MERS – were nominal defendants and fraudulently joined because "there is no possibility that the plaintiff can establish a cause of action against that defendant under applicable state law." *Id.*

Conlin moved to remand. RE 9, Motion to Remand. The district court denied Conlin's motion, finding "that Orlans Associates and Isaacs were

---

[1] Conlin asserts that a Linda Green signed a discharge of a prior mortgage and a Missing Assignment Affidavit related to the prior mortgage. RE 1, Notice of Removal, at Exhibit A, Complaint, ¶ 16, Pg ID 21 and Appellant Brief at p. 7. Neither of these documents in any way relates to the Mortgage, Assignment, or foreclosure at issue in this case.

fraudulently joined" and that the court had diversity jurisdiction. RE 12, Order Denying Plaintiff's Motion for Temporary Restraining Order and Motion for Remand, pp. 2-3, Pg ID 734-35; RE 21, May 17, 2012 Order Denying Plaintiff's Motion for Remand and for Reconsideration, Pg ID 1141. Conlin has not appealed the denial of his motion to remand.[2]

### F. The District Court Grants U.S. Bank's And MERS' Motion To Dismiss.

On December 12, 2011, U.S. Bank and MERS moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) as their first responsive pleading. RE 7, Motion to Dismiss, Pg ID 444. Orlans and Isaacs also moved to dismiss under Fed. R. Civ. P. 12(b)(6). RE 18, Motion to Dismiss, Pg ID 973.

On July 20, 2012, the district court granted both motions. RE 22, Opinion and Order Granting Defendants' Motions to Dismiss, Pg ID 1143. The district court found that dismissal was proper because Conlin lacked standing to challenge the foreclosure sale after the expiration of the redemption period. *Id*. at p. 3, Pg ID 1145. The district court also found that Conlin failed to state a plausible claim that

---

[2] On December 9, 2011, Conlin filed a Motion for Temporary Restraining Order to enjoin the state court eviction proceedings. RE 2, Pg ID 165. The district court held a hearing on the motion on December 14, 2011, and entered an order denying the motion on December 16, 2011. RE 12, Pg ID 733. The district court denied the motion because Conlin made no showing "that the typical preliminary injunction requirements are met, such as likelihood of success on the merits or irreparable harm." RE 12 at p. 3, Pg ID 735.

there was fraud or irregularity in connection with the foreclosure sale. *Id*. And the district court specifically rejected Conlin's claim that there was fraud in connection with the Assignment from MERS to U.S. Bank because Conlin, as a non-party to the assignment, lacked standing to challenge it, and because Conlin failed to show any risk of having to pay the same debt twice. *Id*. at p. 4, Pg ID 1146. This appeal followed.

## SUMMARY OF ARGUMENT

This Court should affirm the dismissal of Conlin's Complaint against MERS and U.S. Bank. The district court correctly applied well-settled Michigan law in holding that Conlin was precluded from challenging U.S. Bank's right to foreclose following the expiration of the statutory redemption period. The district court also properly concluded that Conlin lacks standing to challenge the Assignment from MERS to U.S. Bank because he was not a party to it. Finally, the district court correctly held that MERS had authority to assign the Mortgage to U.S. Bank.

## STANDARD OF REVIEW

This Court reviews the district court's grant of motion to dismiss under Fed. R. Civ. P. 12(b)(6) *de novo*. *See, e.g., Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal

theory.  *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  "In reviewing a motion to dismiss, [the court must construe] the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Rule 12(b)(6) requires that a complaint "contain something more . . . than . . . a statement of facts that merely creates a *suspicion* [of] a legally cognizable right of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) (emphasis added) (internal citation omitted).  A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 1950 (internal quotation marks and citation omitted).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*.

## ARGUMENT

**I.  THE DISTRICT COURT PROPERLY CONCLUDED THAT AFTER THE EXPIRATION OF THE REDEMPTION PERIOD CONLIN LACKED STANDING TO CHALLENGE THE LEGAL CAPACITY OF THE MORTGAGEE TO FORECLOSE BY ADVERTISEMENT.**

### A.    Michigan's Foreclosure By Advertisement Statute.

The Michigan Legislature has set forth the following requirements to foreclose by advertisement in M.C.L. § 600.3204(1), which provides:

> [A] party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
>
> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage . . . .
>
> (c) The mortgage containing the power of sale has been properly recorded.
>
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

M.C.L. § 600.3204(1).   Further, if the foreclosing party is not the original mortgagee, a record chain of title must exist prior to the date of sale.  M.C.L. § 600.3204(3).

The provisions of the foreclosure by advertisement statute are read into and become part of any mortgage containing a power of sale.  *Bass v. Federal Land*

*Bank*, 300 Mich. 418, 421, 2 N.W.2d 447 (1942). It is a fundamental precept that the foreclosure by advertisement statutes were "designed to encourage and not destroy recourse to these simple and cheap remedies" and must be construed and enforced accordingly:

> [These] statutes were intended to prevent surprise or unfairness, and they should be enforced in everything substantial. Courts cannot disregard any of their positive provisions. But on the other hand those provisions . . . cannot be ***unreasonably construed*** so as to render mortgage sales unsafe or to make bidding hazardous. The law was designed to encourage and not to destroy recourse to these simple and cheap remedies; and while no ***substantial*** right should be disregarded, ***substantial regularity*** is all that should be [required].

*Bass v. Federal Land Bank*, 300 Mich. 418, 422, 2 N.W.2d 447 (1942) (quoting *Reading v. Waterman*, 46 Mich. 107, 8 N.W. 691, 692 (1881) (emphasis added)).

"Statutory foreclosures are a matter of contract, authorized by the mortgagor, and ought not to be hampered by an unreasonably strict construction of the law." *White v. Burkhardt*, 338 Mich. 235, 239, 60 N.W.2d 925, 927 (1953). *See also Church & Church Inc. v. A-1 Carpentry*, 281 Mich. App. 330, 339, 766 N.W.2d 30 (2008) (citing *Calaveras Timber Co. v. Michigan Trust Co.*, 278 Mich. 445, 450, 270 N.W. 743 (1936)) (holding that foreclosure by advertisement is governed by statute). A mortgage, like any other contract, "must be enforced as written." *Burkhardt v. Bailey*, 260 Mich. App. 636, 654, 680 N.W.2d 453 (2004); *Burkhardt v. City National Bank*, 57 Mich. App. 649, 226 N.W. 2d 678 (1975).

13

This is due to Michigan's fundamental policy of freedom of contract: "A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written. Courts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract." *Rory v. Continental Ins Co*, 473 Mich. 457, 468, 703 N.W.2d 23 (2005). In interpreting a mortgage contract, to give more security to land title, encourage prompt assertion of equitable claims, and give finality to foreclosures, "statutory foreclosures should not be set aside without some good reason therefor." *White*, 338 Mich. at 239.

## B. U.S. Bank Complied With Michigan's Foreclosure By Advertisement Statute.

Here, U.S. Bank indisputably satisfied the requirements of Michigan's foreclosure by advertisement statute. First, Conlin does not dispute that he defaulted under the Loan, and that the Mortgage expressly granted the power of sale, which satisfied M.C.L. § 600.3204(a). Second, no other proceeding was instituted to recover the debt secured by the Mortgage, which satisfied M.C.L. § 600.3204(1)(b). Third, Conlin's Mortgage was recorded with the Washtenaw County Register of Deeds, satisfying M.C.L. § 600.3204(1)(c). Fourth, U.S. Bank owns an interest in the indebtedness as mortgagee of record by virtue of the Assignment of the Mortgage from MERS, which this Court has held complies with M.C.L. § 600.3204(1)(d) per the Michigan Supreme Court's decision in

*Residential Funding Co., LLC v. Saurman*, 490 Mich. 909, 805 N.W.2d 183 (2011). *See Hargrow v. Wells Fargo Bank, N.A.*, No. 11-1806, 2012 WL 2552805 (6th Cir. July 3, 2012). Finally, there was a record chain of title to U.S. Bank by virtue of the Assignment, which satisfied M.C.L. § 600.3204(3). U.S. Bank therefore complied with the foreclosure by advertisement statute. Conlin's Complaint was properly dismissed, and this Court should affirm.

> ### C. After The Redemption Period Expired, Conlin Had No Basis Under Michigan Law To Challenge The Capacity Of The Mortgagee To Foreclose By Advertisement.

The district court properly held that, under Michigan law, Conlin had no basis to challenge U.S. Bank's legal capacity to foreclose by advertisement after the redemption period expired.

Following foreclosure, the rights and obligations of the parties are governed by statute. *Senters v. Ottawa Savings Bank, FSB*, 443 Mich. 45, 52-53, 503 N.W.2d 639 (1993). Michigan law grants a mortgagor of residential property a statutory redemption period of six months. M.C.L. § 600.3240(8). When the redemption period expires, the purchaser who received the sheriff's deed is vested by statute with "all the right, title, and interest" in the property. M.C.L. § 600.3236. As the Michigan Supreme Court has confirmed: "Plaintiffs . . . lost all their right, title, and interest in and to the property at the expiration of their right of

redemption . . . ." *Piotrowski v. State Land Office Bd*, 302 Mich. 179, 187, 4 N.W.2d 514 (1942).

Here, U.S. Bank purchased the Property at the sheriff's sale, and Conlin's right to redeem the Property expired on September 30, 2011.  RE 7 at Exhibit D, Sheriff's Deed, Pg ID 506.  Conlin did not redeem the Property, and filed his Complaint on October 28, 2011, after the redemption period expired.  As explained below, per longstanding precedent, Conlin had no legal basis to challenge the legal capacity of the mortgagee after the redemption period expired.

1. <u>Numerous Michigan Authorities Establish That Conlin Cannot Challenge The Legal Capacity Of The Mortgagee After The Redemption Period Expired.</u>

It is well-settled Michigan law that a borrower cannot challenge the legal capacity of the mortgagee to foreclose following the expiration of the redemption period.  In *Reid v. Rylander*, 270 Mich. 263, 258 N.W. 630 (1935), the successor trustee under a deed of trust (mortgage) containing a power of sale foreclosed and, after the redemption period expired, commenced eviction proceedings.  *Id*. at 266. During the eviction proceedings, the mortgagor argued that the successor trustee was not appointed in accordance with the mortgage and did not have a right to foreclose.  *Id*.  The Michigan Supreme Court held that the mortgagor could not challenge the legal capacity of the mortgagee or trustee in an eviction proceeding after the redemption period expired:

16

> We again hold that validity of the sale may be tested in a summary proceeding based thereon, in so far as invalidity thereof appears in the procedure, but underlying equities, if any, bearing on the instrument, ***legal capacity of the mortgagee or trustee***, and other matters, wholly dehors the record, inclusive of an accounting to determine the amount due, ***cannot be made triable issues in a summary proceeding***.

*Id.* at 267 (emphasis added).

The Michigan Court of Appeals rejected the standing of a former property owner who allowed the redemption period to expire in *Overton v. Mortgage Electronic Registration Sys.*, No. 284950, 2009 WL 1507342 (Mich. Ct. App. May 28, 2009) (unpublished). In *Overton*, the plaintiff claimed fraud in connection with a foreclosure sale. *Id.* at *1. The plaintiff filed the lawsuit several months after the foreclosure sale date, but before the expiration of the redemption period. *Id.* The redemption period expired a few weeks after the plaintiff filed suit, and the defendants brought a motion for summary disposition asserting that the plaintiff no longer had standing to assert any continued interest in the subject property. *Id.* The Michigan Court of Appeals affirmed the trial court's order of summary disposition in the defendants' favor. *Id.* The Court of Appeals noted:

> Plaintiff's suit did not toll the redemption period. Plaintiff is simply trying to wage a collateral attack on the foreclosure of the property. Even if his assertions were true and the cases he cites indeed supported his arguments, plaintiff was required to raise the arguments when foreclosure proceedings began. Plaintiff made no attempt to stay or otherwise challenge the foreclosure and

17

redemption sale.  Although he filed his suit before the redemption period expired, that was insufficient to toll the redemption period . . . . ***Once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished.***

*Id*. (emphasis added); *see also Mission of Love v. Evangelist Hutchinson Ministries*, No. 266219, 2007 WL 1094424, at *5 (Mich. Ct. App. Apr 12, 2007) (unpublished) (concluding that after the redemption period expired, plaintiff had no interest in the property so the trial court could not grant plaintiff's requested relief).

The Michigan Court of Appeals recently confirmed these longstanding principles of Michigan law in *Awad v. General Motors Acceptance Corp*., No. 302692, 2012 WL 1415166 (Mich. Ct. App. April 24, 2012) (unpublished).  In *Awad*, the statutory redemption period expired on November 26, 2010.  *Id*. at * 1. Plaintiff failed to redeem the property and, instead, filed suit just prior to the expiration of the redemption period.  *Id*.  Defendant moved for summary disposition, and the trial court granted defendant's motion on the ground that plaintiff lacked standing to challenge the foreclosure sale.  *Id*.  On appeal, the Court of Appeals affirmed.  In a well-reasoned opinion, the Court of Appeals adopted the reasoning of the court in *Overton* and *Mission of Love*. *Id*. at * 4.  The Court confirmed that once the redemption period expired, "all of [plaintiff's] rights in and title to the property were extinguished" and plaintiff "therefore, lost her standing to sue." *Id*.

18

### 2.   Conlin's Attempt To Circumvent These Principles Lacks Merit.

Rather than attempt to distinguish these fundamental principles of Michigan law, Conlin plays semantics.  Conlin cites two unpublished decisions of the Eastern District of Michigan for the proposition that the Michigan Court of Appeals' decisions in *Overton*, *Mission of Love*, and *Awad* are more "merits-based" rather than rooted in "standing." *See Langley v. Chase Home Finance, LLC*, No. 10-604, 2011 WL 130926 (W.D. Mich. Mar. 28, 2011) and *Brezzell v. Bank of America, N.A.*, No. 11-11467, 2011 WL 2682973 (E.D. Mich. July 11, 2011).  In *Langley*, the district judge, in a footnote, reasoned that the *Overton* standing concept is a bit of a misnomer, and *Overton* should be viewed as a merits decision, not a standing decision. *Langley*, 2011 WL 130926 at *2, n.2.  The court in *Brezzel* discussed the *Langley* opinion and also disagreed with the choice of the term "standing" to describe *Overton*, and concluded that *Overton* is more of a merits decision than a standing decision.  But the court "still [found] that *Overton* is applicable and Defendants are still entitled to dismissal because the redemption period has expired and Plaintiff has not shown the requisite fraud or irregularity in the foreclosure proceedings." *Brezzell,* 2011 WL 2682973 at *4.

Numerous other decisions state that these principles of Michigan law are properly termed as "standing" principles.  For example, in a published decision, *Dingman v. OneWest Bank, FSB*, 859 F.Supp.2d 912 (E.D. Mich. 2012), the court

held that "once the redemption period expired on December 2, 2011, plaintiffs lost standing to assert defects in the foreclosure proceedings and/or the sheriff's sale." *Id*. at 918.  *See also Drew v. Kemp-Brooks*, 802 F. Supp. 2d 889, 894 (E.D. Mich. 2011) ("When Plaintiff failed to redeem the property before the redemption period expired on November 5, 2010, JPMC Specialty became vested with 'all right, title, and interest' in the property by operation of law.  While Plaintiff filed this action on the day the redemption period expired, the filing of this lawsuit did not toll the redemption period."); *Moriarty v. BNC Mortgage, Inc.*, No. 10-13860, 2010 WL 5173830, at *2-*3 (E.D. Mich., Dec. 10, 2010) (unpublished) ("[O]nce the redemption period expired . . . Plaintiff lost standing to seek a declaratory judgment voiding the foreclosure proceedings and sheriff's sale."); *Jackson v. CitiMortgage, Inc*., No. 10-14221, 2011 WL 479923, at * 2 (E.D. Mich., Feb 4, 2011) (unpublished) (holding that after the redemption period expired, plaintiff "lack[ed] standing to challenge the validity of the foreclosure or sheriff's sale[.]"); *Williams v. US Bank Nat'l Ass'n*, No. 10-14967, 2011 WL 2293260, at *1 (E.D. Mich., June 9, 2011) ("The redemption period expired September 2, 2010; and Plaintiffs failed to redeem the property", therefore, "Plaintiffs lack standing to challenge the foreclosure….") (unpublished); *Galati v. Wells Fargo Bank*, Case No. 11–11487, 2011 WL 5178276, *3 (E.D. Mich. Nov. 1, 2011) (holding that

because the redemption period had expired "plaintiff, the former owner, lost standing to assert claims with respect to the property") (unpublished).

In any event, Conlin's argument elevates form over substance. Regardless of whether the applicable law is rooted in "standing" or is "merits-based," nothing changes the fact that Conlin has no basis to challenge the legal capacity of U.S. Bank following the expiration of the redemption period. The Property was sold at a sheriff's sale on March 31, 2011. RE 7 at Exhibit D, Pg ID 506. Conlin did not redeem the Property during the statutory six-month redemption period, which expired on September 30, 2011. *Id.* After the redemption period expired, U.S. Bank was vested with "all the right, title, and interest" that Conlin had previously held in the Property. M.C.L. § 600.3240(8); M.C.L. § 600.3236.

As was the case in *Reid*, Conlin is challenging the legal capacity of U.S. Bank to foreclose, and such challenges are not permitted after the redemption period has expired. *Reid*, 270 Mich. at 267. This Court, sitting in diversity, is bound by *Reid* as a binding interpretation of Michigan law. *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 236 (1940). Accordingly, the district court properly dismissed the Complaint. This Court should affirm.

## II.   CONLIN FAILED TO STATE A PLAUSIBLE CLAIM OF FRAUD OR IRREGULARITY TO TOLL THE REDEMPTION PERIOD.

Conlin's sole factual basis for challenging the foreclosure is that the Assignment from MERS to U.S. Bank was allegedly "robo-signed." Ostensibly,

Conlin asserts that this supposed "fraud" should toll the redemption period and permit him to challenge the legal capacity of U.S. Bank to foreclose despite his failure to redeem the Property.

"The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *Sweet Air Inv. Inc. v. Kenney*, 275 Mich. App. 492, 497, 739 N.W.2d 656 (2007) (quoting *United States v. Garno*, 974 F.Supp. 628, 633 (E.D. Mich. 1997), citing *Detroit Trust Co. v. Aggozinio*, 280 Mich. 402, 405–06, 273 N.W. 747 (1937)). "The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity." *Schulthies v. Barron*, 16 Mich. App. 246, 247–48, 167 N.W.2d 784 (1969).

As discussed below, Conlin's "robo-signing" argument fails because he has not come close to stating a claim for fraud, and in any event, a non-party to an assignment of mortgage lacks standing to challenge the assignment.

### A.    Conlin Has Not Stated A Claim For Fraud.

The following elements are necessary to state a claim for fraud under Michigan law:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it

was false, or made it recklessly, without any knowledge
of its truth and as a positive assertion; (4) that he made it
with the intention that it should be acted upon by
plaintiff; (5) that plaintiff acted in reliance upon it; and
(6) that he thereby suffered injury.

*Hi–Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 336, 247

N.W.2d 813 (1976).  "Each of these facts must be proved with a reasonable degree

of certainty, and all of them must be found to exist; the absence of any one of them

is fatal to a recovery." *Id.*

Further, Fed. R. Civ. P. 9(b) requires a plaintiff to plead fraud "with

particularity."  To satisfy the particularity requirements of Rule 9(b), a plaintiff

must "allege the time, place, and contents of the misrepresentation(s) upon which

he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).

Here, Conlin has not come close to stating a claim of fraud.  His vague

assertion of "robo-signing" of the Assignment by Marshall Isaacs is not supported

with any particularized facts.  Indeed, even in his Brief on Appeal, Conlin

concedes that Mr. Isaacs may have signed the Assignment, and does nothing more

than vaguely assert that "Marshal [sic] Isaacs is also known for being the subject of

many robosigning investigations throughout Michigan and Massachusetts," and

that the notary's signature looks different from the signature on her notary

application with the State of Michigan.  Conlin's Brief, p. 8, pp. 18-19.  Conlin has

not alleged that he relied on the authenticity of Isaacs' or the notary's signature on

the Assignment, which was executed in 2008, before the first of Conlin's seven bankruptcy filings to stave off foreclosure. Conlin also has not alleged any damages as a result of the Assignment. As explained in more detail below, he is not challenging whether the Mortgage could be foreclosed, but rather who should foreclose. He also has not alleged any facts showing that he is at risk of double liability. Conlin, therefore, has not come close to stating a plausible claim to toll the redemption period and set aside his foreclosure. This Court should affirm the district court's dismissal of the Complaint.

### B. Conlin Lacks Standing To Challenge The Assignment, To Which He Is Not A Party.

The district court also properly concluded that Conlin lacked standing to challenge the Assignment. It is well-established that a borrower, such as Conlin, lacks standing to challenge a mortgage assignment to which he is not a party. *See Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 717 F.Supp.2d 724, 735-37 (E.D. Mich. 2010), *aff'd* 399 Fed. Appx. 97, 103, 2010 WL 4275305 (6th Cir. 2010). In *Livonia Property*, the court denied a borrower's claim that a foreclosure by advertisement was invalid due to an allegedly invalid mortgage assignment, concluding that that the "[b]orrower may not challenge the validity of assignments to which it was not a party or third-party beneficiary, where it has not been prejudiced, and the parties to the assignments do not dispute (and in fact affirm) their validity." *Id.* at 737. This is because "the validity of the

assignments does not effect [sic] whether a [b]orrower owes its obligations, but only to whom [a b]orrower is obligated." *Id*. at 735. The *Livonia Property* court analyzed Michigan and nationwide authority, and concluded that "for over a century, state and federal courts around the country have applied similar reasoning to hold that a litigant who is not a party to an assignment lacks standing to challenge that assignment." *Id*. at 736-37.

This Court affirmed, first noting that there was "no authority for the proposition that the record chain of title is destroyed by an irregularity affecting the validity of a transfer. Even if the transfer were invalidated, the public record would remain as it is, and the record chain of title would not be disturbed." 399 Fed. Appx. at 102. Moreover, the Court concluded that even if there was a flaw in the assignment, the borrower "[did] not have standing to raise that flaw to challenge [the foreclosing party's] chain of title." *Id.* "As recognized by the district court, there is ample authority to support the proposition that 'a litigant who is not a party to an assignment lacks standing to challenge that assignment.'" *Id.*

Although the Court in *Livonia Property* referred to certain "defenses" obligors may have standing to raise with respect to assignments—specifically, "nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment," *id*., at 103—none of those exceptions apply here. The

Mortgage was assignable by its own terms; there is no claim that MERS lacked title to the Mortgage; and there is no allegation that MERS revoked the Assignment prior to the foreclosure.    On the contrary, the parties to the Assignment—MERS and U.S. Bank—do not contest its validity and have acted in accordance with it.    Without either party to the Assignment contesting its validity, it is valid as to Conlin and other non-parties, and cannot be invalidated at the urging of such non-parties to the document.    *Livonia Property*, 399 Fed. Appx. at 103; *see also Cable v. MERS, Inc.*, No. 11-14877, 2012 WL 2374236 at *3 (E.D. Mich. Feb 28, 2010) ("[A] non-party to an assignment may not challenge the assignment if the assignor and assignee do not contest the document and act in accordance with it.").    Under these circumstances, Conlin has no standing to challenge the Assignment.    *See Bowles v. Oakman*, 246 Mich. 674, 225 N.W. 613 (1929) (holding that obligor under promissory note could not challenge obligations based on alleged invalidity of assignment of note); *Pashak v. Interstate Highway Constr.*, No. 189886, 1998 WL 2001203 (Mich. Ct. App., Mar. 20, 1998) (holding that lessee had no standing to challenge assignment of rights in lease because "the parties to the assignment…[did] not contest its validity.").

Conlin cannot survive a motion to dismiss to challenge the Assignment simply by alleging that it was "forged" or "robo-signed."    Conlin relies upon *Talton v. BAC Home Loans Servicing LP*, 839 F.Supp.2d 896, 907 (E.D. Mich.

2012) for the proposition that *Livonia Property* left open the possibility of a borrower challenging an assignment as a "forgery." Conlin ignores, however, that the *Talton* court's discussion extends only to situations where a borrower is put at risk of double liability on the same debt. *Id*. at 906 (citing *Livonia*, 399 Fed. Appx. at 102).

Conlin has failed to allege any facts stating a plausible claim that he is at risk of double liability. He does not allege that another party sought to enforce the debt or take action against the mortgaged property. It is true, as Conlin notes, that "[t]here can be no such thing as a bona fide holder under a forged deed, whose good faith confers any rights against the party whose name has been forged, or those claiming under him." *Special Property VI v. Woodruff*, 273 Mich. App. 586, 591, 730 N.W.2d 753 (2007) (quoting *VanderWall v. Midkiff*, 166 Mich. App. 668, 685, 421 N.W.2d 263 (1988)) (emphasis added). Here, however, the allegedly "forged" instrument is the Assignment from MERS to U.S. Bank. Conlin does not allege that the underlying Mortgage, which conveyed an interest in the real property to MERS as security for the loan, was itself forged. Moreover, MERS— the party who would have been the victim of the alleged "forgery," not Conlin— does not contest the Assignment and has acted in accordance with it. None of the cases on which Conlin relies for his "forgery" argument support the proposition that a non-party to an assignment can challenge the assignment as a "forgery"

27

where the parties to the assignment do not challenge its validity and the underlying obligation is valid, and that is the fatal flaw in Conlin's line of analysis. *See id*. at 588; *Felcher v. Button*, 265 Mich. 231, 233, 251 N.W. 332 (1933); *Horvath v. National Mortg. Co*., 238 Mich. 354, 359–60, 213 N.W. 202 (1927); *Horton v. Verhelle*, 231 Mich. App. 667, 677, 588 N.W.2d 144 (1998).

At most, if the Assignment from MERS had been "forged" or "robo-signed," the Assignment would arguably be ineffective as against MERS. It would be up to MERS, as assignor, to press such a claim against U.S. Bank, as assignee. Rather than doing so, MERS—a party to this lawsuit—has defended against Conlin's claims that the foreclosure is invalid. Given that MERS has affirmatively argued that the Assignment and foreclosure are valid, there is no risk to Conlin of "double liability" based upon his "robo-signing" allegations.

Moreover, given that U.S. Bank, the foreclosing party, was mortgagee of record, there can be no risk of "double liability" for the same debt. A necessary consequence of foreclosure is that the debt is reduced by the amount paid at the foreclosure sale; in other words, the amount paid at the foreclosure sale is credited against the debt. *Pulleyblank v. Cape*, 179 Mich. App. 690, 694, 446 N.W.2d 345 (1989). When the mortgagee of record purchases the property at the foreclosure sale—which is permitted under MCL 600.3288—it is "not required to pay cash, but rather [is] permitted to make a credit bid because any cash tendered would be

returned to it." *New Freedom Mortgage Corp. v. Globe Mortgage Corp.*, 281 Mich. App. 63, 68, 761 N.W.2d 832 (2008); *see also Feldman v. Equitable Trust Co.*, 278 Mich. 619, 622, 270 N.W. 809 (1937) (holding that where mortgagee bids the amount due, "[a]ctual payment to the sheriff would have been an idle gesture") (quoting *Griffin v. Union Guardian Trust Co.*, 261 Mich. 67, 245 N.W. 572 (1932)). Thus, the amount the mortgagee of record bids at the foreclosure is credited against the debt. *Pulleyblank*, *supra* at 695 ("Pulleyblank, as the purchaser, 'paid' $251,792 for the property, even though no actual cash exchanged hands. Therefore, Pulleyblank, as mortgagee, 'received' $251,792 for the Howell property, and this purchase price must be applied to the debt.").

Here, when U.S. Bank foreclosed and made a credit bid, Conlin's debt was reduced by the amount of the bid. There can be no "double liability" for that amount. Further, the foreclosure by advertisement statute protects mortgagors from a "double recovery" both before and after the foreclosure. Before foreclosure, M.C.L. § 600.3204(1)(b), explicitly precludes foreclosure by advertisement if a proceeding on the debt secured by the mortgage has already been instituted. This provision was designed to "prevent double recovery on the same debt." *Church & Church Inc v. A-1 Carpentry*, 281 Mich. App. 330, 341, 766 N.W. 2d 30 (2008). After foreclosure, M.C.L. § 600.3280 provides borrowers with a defense to claims for deficiency judgments brought by the "mortgagee,

payee or other holder of the secured obligation."  Pursuant to M.C.L. § 600.3280, the mortgagor may show "as matter of defense and set-off…that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value."

The district court properly concluded that U.S. Bank was the mortgagee of record with authority to foreclose by advertisement.  As such, Conlin is not at risk for "double liability" on the same debt.

Further, as the district court noted, Conlin made no allegation that anyone else has attempted to collect on the note.  RE 22, Opinion and Order Granting Defendants' Motions to Dismiss, at p. 4, Pg ID 1146.  Conlin's mere conjecture, unsupported by any factual allegations, is insufficient to support the claim that he is at risk of having to pay the same debt twice.  *Id.*; *see also Thomas v. Mortg. Electronic Registration Sys., Inc.*, No. 11–15670, 2012 WL 834688, at *5 (E.D. Mich. Mar. 13, 2012) ("Because Plaintiff cannot establish any risk of having to pay the same debt twice, it is well-established under Michigan law that Plaintiff lacks standing to challenge the validity of an assignment to which she is not a party.").  Because Conlin did not state a plausible claim that he is at risk of "double liability," the district court properly rejected his challenge to the foreclosure.  This Court should affirm.

## III.    MERS HAD AUTHORITY TO ASSIGN THE MORTGAGE.

Conlin's other challenge to the Assignment—that MERS could not validly assign the Mortgage—is not only barred due to his lack of standing as discussed above, but is also directly contrary to the plain language of the Mortgage and the Michigan Supreme Court's opinion in *Residential Funding Co., LLC v. Saurman*, 490 Mich. 909, 805 N.W.2d 183 (2011).

### A.    Conlin Expressly Agreed That MERS Could Assign The Mortgage As Mortgagee As Nominee For The Original Lender And The Lender's Successors And Assigns.

As an initial matter, Conlin expressly agreed that MERS could assign the Mortgage.  A mortgage is a contract, *Burkhardt v. Bailey*, 260 Mich. App. at 654, and foreclosure by advertisement is "a matter of contract, authorized by the mortgagor, and ought not to be hampered by an unreasonably strict construction of the law."  *Church & Church, Inc v. A-1 Carpentry*, 281 Mich. App. at 340.  A mortgage, like any other contract, "must be enforced as written."  *Burkhardt v. Bailey*, *supra* at 654.  It is well-settled that the "cardinal rule" in interpreting contracts is to effectuate the intent of the parties.  *Quality Prods. and Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375, 666 N.W.2d 251 (2003); *Hubbell, Roth & Clark, Inc. v. Jay Dee Contractors, Inc.*, 249 Mich. App. 288, 291, 642 N.W.2d 700 (2002).

The Mortgage that Conlin signed, and the validity of which he does not

challenge, provides as follows:

> MERS is…acting **solely as nominee for Lender and Lender's successors and assigns**.
>
> \* \* \* \*
>
> Borrower does hereby mortgage, warrant, grant and convey to **MERS (solely as nominee for Lender and Lender's successors and assigns) <u>and to the successors and assigns of MERS</u>**, [the subject Property.]
>
> \* \* \* \*
>
> Borrower understand and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, **MERS, (as nominee for Lender and Lender's successors and assigns), has the right to: exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property**….

RE 7 at Exhibit A, pp. 1-3, ¶ (C), Pg ID 475-77 (emphasis added).

This contractual language is unambiguous. Pursuant to this contractual language, Conlin expressly acknowledged and agreed that MERS was the nominee for the Lender and the Lender's successors and assigns, and that MERS had the right to assign the Mortgage. Conlin admits that MERS was nominee for the original lender. He has not alleged facts suggesting that MERS was not also nominee to any successor of the Lender, nor could he because he agreed that MERS would be nominee for the Lender's successors and assigns. Having expressly provided for and agreed with the ability of MERS to assign the Mortgage, Conlin cannot now challenge the foreclosure based on the fact that

MERS assigned the Mortgage.

**B.    Conlin's Argument That The Assignment "Split" The Mortgage And Note Is Inconsistent With Michigan Supreme Court Precedent In *Saurman*.**

Further, Conlin's argument that the Assignment "split" the Mortgage from the Note, and as a result the Assignment is a nullity, is contrary to *Saurman* and cases applying it. *Saurman* directly rejected the underlying premise of Conlin's argument, i.e., that a party cannot foreclose by advertisement unless it owns the underlying debt. In *Saurman*, the Michigan Supreme Court held that "the Legislature's use of the phrase 'interest in the indebtedness' to denote a category of parties entitled to foreclose by advertisement indicates ***the intent to include mortgagees of record among the parties entitled to foreclose by advertisement***, along with parties who 'own[] the indebtedness' and parties who act as 'the servicing agent of the mortgage.'" 490 Mich. at 909 (emphasis added). Thus, even though MERS did not own the underlying debt, "as record-holder of the mortgage, MERS owned a security lien on the properties, the continued existence of which was contingent upon the satisfaction of the indebtedness. This interest in the indebtedness—i.e., the ownership of legal title to a security lien whose existence is wholly contingent on the satisfaction of the indebtedness—authorized MERS to foreclose by advertisement under MCL 600.3204(1)(d)." *Id.* The Supreme Court in *Saurman* further confirmed that "[i]t has never been necessary

that the mortgage should be given directly to the beneficiaries. The security is always made in trust to secure obligations, ***and the trust and the beneficial interest need not be in the same hands***. . . . The choice of a mortgagee is a matter of convenience." *Id.* at 910 (quoting *Adams v. Niemann*, 46 Mich. 135, 137, 8 N.W. 719 (1881) (emphasis added)).[3]

Under *Saurman*, MERS had the right to foreclose by advertisement when it was record holder of the Mortgage, even if it did not own the underlying debt. When MERS assigned the Mortgage to U.S. Bank, it assigned that same right to U.S. Bank. In other words, once U.S. Bank became mortgagee of record, U.S. Bank had the right to foreclose by advertisement under *Saurman*.

Even before the Michigan Supreme Court's decision in *Saurman* was announced, Michigan courts recognized the basic principle that an assignee of a mortgage obtains the same rights as the original mortgagee. In *Bakri v. Mortgage Electronic Registration System*, No. 297962, 2011 WL 3476818 (Mich. App. Aug.

---

[3] In addition to *Saurman*, other courts have held under Michigan law that a MERS mortgage does not create an impermissible separation of ownership of the mortgage from the underlying debt so as to render the lien a nullity. *See, e.g. Yuille v. American Home Mortg. Serv., Inc.*, Case No. 09-11203, 2010 WL 4260890, at *20-21 (E.D. Mich. Oct 25, 2010), *aff'd* No. 10-2564, 2012 WL 1914056 (6th Cir. May 29, 2012) (rejecting the argument that there is separation of the note and mortgage when using a MERS mortgage). As stated by the court in *Knox v. Trott & Trott, PC*, Case No. 10–13175, 2011 WL 1540340, at *4 (E.D. Mich., April 21, 2011), the note-splitting theory in MERS mortgage cases fails for at least two additional reasons: "(1) the absence of dispositive authority supporting [the] position; and (2) the language of the mortgage itself."

34

9, 2011), the court held that "[b]ecause plaintiff granted ... MERS the power to assign the mortgage, the assignment of the mortgage to [the foreclosing party] was valid.  Furthermore, because the mortgage specifically granted ... MERS the power to foreclose on and sell the property as nominee for the lender, [the foreclosing bank], as assignee of the mortgage, also had the power to foreclose on and sell the property." *Id*. at *4.  However, *Bakri* went on to conclude that, based upon the Michigan Court of Appeals' as-yet-unreversed opinion in *Saurman*, the assignee of MERS could not foreclose by advertisement because the interest it obtained by virtue of that assignment was not an "interest in the indebtedness" under M.C.L. 600.3204(1)(d).  *Id*.

The Michigan Supreme Court directly rejected this proposition in *Saurman*. As such, on remand, the court in *Bakri* recently held that, regardless of whether the foreclosing party owned the note, foreclosure by advertisement "was available" by virtue of the recorded assignment of the mortgage from MERS.  *Bakri v. Mortgage Electronic Registration System (After Remand)*, No. 297962 (Mich. Ct. App. Oct. 30, 2012); *see also Fawaz v. Aurora Loan Servs. LLC*, No. 302840, 2012 WL 1521589, at *2 (Mich. Ct. App. May 1, 2012) ("[W]hen MERS assigned its interests in the mortgage to defendant, defendant stood in MERS['s] shoes and had the same authority to foreclose under MCL 600.3204(1)(d).").

This Court recently addressed and rejected the argument that an assignment

of a mortgage by MERS is invalid without an assignment of the underlying debt.

*See Hargrow v. Wells Fargo Bank, N.A.*, No. 11-1806, 2012 WL 2552805 (6th Cir.

July 3, 2012).  Relying on *Saurman*, this Court held that Wells Fargo had statutory

authority to foreclose by advertisement under Michigan law following an

assignment of a mortgage by MERS:

> The Hargrows maintain that the assignment of the
> Mortgage from MERS to Wells Fargo was invalid
> because a mortgage cannot be assigned without a
> corresponding assignment of the underlying debt.  We
> disagree, and so does the Michigan Court of Appeals
> [(citing *Bakri* prior to remand)].
>
> * * * *
>
> Here, MERS was unambiguously the original mortgagee
> of the Hargrows' Mortgage. The Hargrows granted
> MERS the power to assign the Mortgage, and MERS
> used that power to assign the Mortgage to Wells Fargo.
> The assignment was recorded in the Washtenaw County
> Clerk's Office, creating a clear record chain of title for
> the Mortgage. The Mortgage also gave MERS as
> mortgagee the power to initiate foreclosure proceedings,
> and once assigned, Wells Fargo as record-holder of the
> Mortgage also had the power to foreclose under the
> Mortgage. And since the chain of title of the mortgage
> was properly recorded, Wells Fargo as the owner of an
> interest in the indebtedness had the power to foreclose by
> advertisement under § 600.3204.

*Id.* at *3.

The same reasoning applies with equal force here.  Conlin signed the

Mortgage in which he named MERS as the "mortgagee under this Security

Instrument" and acknowledged that MERS was "acting solely as a nominee for

36

Lender and Lender's successors and assigns." RE 7 at Exhibit A, p. 1, ¶ (C), Pg ID 475. Conlin further authorized MERS to exercise "the right to foreclose and sell the Property." *Id.* at p. 3, Pg ID 477. The Mortgage and the Assignment were recorded with the register of deeds, creating a clear record chain of title to U.S. Bank. The allegation that MERS lacked an ownership interest in the underlying Note did not deprive MERS of authority to foreclose under *Saurman*. That same allegation cannot be bootstrapped into the argument that, absent an ownership interest in the underlying Note, the Assignment of the Mortgage was itself invalid. Michigan law before and after the Supreme Court's decision in *Saurman* negates such an argument. The District Court correctly rejected the argument that MERS lacked authority to validly assign the Mortgage. This Court should affirm.

## CONCLUSION

The district court properly followed Michigan law in dismissing Conlin's Complaint. This Court should affirm the district court in all respects.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: /s/Thomas M. Schehr
Thomas M. Schehr (P54391)

37

Michael J. Blalock (P68969)
Attorneys for Defendants-Appellees
400 Renaissance Center
Detroit, MI  48243
Telephone:  (313) 568-6800
Facsimile:  (313) 568-6658
tschehr@dykema.com
mblalock@dykema.com

Date: November 7, 2012

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,409 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface, using Microsoft Word with 14-point Times New Roman font.

DYKEMA GOSSETT PLLC

By: /s/Thomas M. Schehr
    Thomas M. Schehr (P54391)
    Michael J. Blalock (P68969)
    Attorneys for Defendants-Appellees
    400 Renaissance Center, 37th Floor
    Detroit, MI  48243
    Telephone:  (313) 568-6659
    Facsimile:  (313) 568-6658
    tschehr@dykema.com
    mblalock@dykema.com

Date: November 7, 2012

## **CERTIFICATE OF SERVICE**

I certify that on the 7th day of November, pursuant to 6 Cir. R. 25, I caused the foregoing to be filed electronically, and all counsel of record will be served electronically through the ECF System.

DYKEMA GOSSETT PLLC

By: /s/Thomas M. Schehr
    Thomas M. Schehr (P54391)
    Michael J. Blalock (P68969)
    Attorneys for Defendants-Appellees
    400 Renaissance Center, 37th Floor
    Detroit, MI  48243
    Telephone:  (313) 568-6659
    Facsimile:  (313) 568-6658
    tschehr@dykema.com
    mblalock@dykema.com

Date: November 7, 2012

# COUNTER-DESIGNATION OF
# RELEVANT DISTRICT COURT DOCUMENTS

In addition to the documents identified in Appellant's Brief, the following District Court documents are relevant to this appeal.

| Description of Entry | Filing Date | Entry No. | Pg. ID Range |
|---|---|---|---|
| MERS Notice of Removal Exhibit A, Complaint | 12/06/2011 | 1 | 12-149 |
| Conlin Motion for Temporary Restraining Order | 12/09/2011 | 2 | 165-314 |
| MERS Motion to Dismiss and Brief in Support, including all exhibits | 12/12/2011 | 7 | 444-503 |
| Conlin Motion to Remand | 12/13/2011 | 9 | 567-576 |
| Order denying Motion for Temporary Restraining Order and denying Motion to Remand | 12/16/2011 | 12 | 733-36 |
| MERS Reply to Conlin's Response to Motion to Dismiss, including all exhibits | 1/13/2012 | 17 | 941-72 |
| Order denying Motion for Reconsideration of Motion to Remand | 5/17/2012 | 21 | 1141-1142 |